## Jonas Nutting & another *vs.* Eli Page.

The reasons stated by the master workman, when building a dam, for making it lower in the middle than at either end, are not competent evidence against his employer that it was so made.

Evidence that the owner of a dam, when rebuilding it, gave instructions to mark the height of the old dam, and make the new one of the same height, is not admissible in his favor to show that it was so built. Nor can the person so instructed be permitted to testify that, after so marking the height, he gave an account of it to his employer and advised him to have it raised, which the latter refused.

A lease of a mill, containing stipulations as to the amount of water power to be furnished by the lessor to the lessee, and as to the height to which a third person shall have the right to raise another dam below on the same stream, is admissible in evidence against the lessor on the trial of a complaint against such third person to recover damages for flowing occasioned by raising his dam too high.

On a complaint under Rev. Sts. *c.* 116, the question, whether any part of the land described in the complaint, and situated in the county, was injured by the respondent's milldam, cannot be tried at the bar of the court, but is open before the sheriff's jury who view the land.

On the trial of a complaint under Rev. Sts. *c.* 116, for flowing land by a milldam which the respondent is admitted to have the right to keep up to a certain height, an instruction to the jury, if they find for the complainants, to find how high the dam had been raised, is not open to objection for imposing the burden of proof on the complainant.

Complaint under the mill act (Rev. Sts. *c.* 116,) for building a dam across the Nashua River in Shirley in this county, and thereby flowing three lots of land of the complainants, one in Harvard and another in Lancaster, in the county of Worcester,

49*

and the third in Shirley. The respondent pleaded in bar, "not waiving objections to the complainants' claims for damages as to the two first described lots, on account of said lots or any part thereof not being in said county of Middlesex," that he had a right to maintain his dam as it was now maintained, because he had so maintained it for more than twenty years; and that he had a right to flow said parcels of land, as they were flowed, by virtue of a grant of that right, made more than twenty years since, and because he had continued to flow said lands more than twenty years.

At the trial in the court of common pleas, before *Perkins,* J., it was admitted that the respondent had a right to maintain the dam as it existed up to August 1852, when the old dam was taken down and a new one built. There was conflicting evidence upon the questions whether the top of the old dam was so built and maintained as to curve down lower in the centre than at either end, and whether the new dam was built level across the top, and raised the water higher than the old dam, when in good repair, would have raised it.

A witness called by the complainants testified that he worked on the old dam when it was first built, sixty years ago, that it was built curving down lower in the centre than at the ends, and that the master workman who built it was dead. The complainants asked him if the master workman, while making the dam, told any reason why he made it curving in the centre. But the question was objected to, and ruled out.

The respondent offered to prove that, when the dam was about to be reconstructed, he gave instructions to his sons, who were making preparations for reconstructing it, to go and find the height of the old dam and fix it, and to build the new dam of the same height, and that they followed these directions, and caused the dam to be so built, and it was. The complainants objected that this was evidence of the mere declarations of the respondent, and therefore not admissible; but the judge admitted it.

Roberts, a witness called by the respondent, testified that, before the old dam was taken away, he, at the request and in

the presence of the respondent's sons, made a mark at the exact height of it, and that the new dam was built to that height; and he was permitted also to testify, against the complainants' objection, that he went to the respondent, after the mark was so fixed, and gave him an account thereof, and told him that he had better raise the dam one foot, and the respondent, in a very peremptory manner, replied that he would not have it raised one inch.

The respondent proved that the complainants had erected a cotton mill on a brook running into the river above the respondent's dam, and constructed a reservoir dam across the brook near its source, and so held back a large reservoir of water for use in the dry season, and had leased this dam to the Phoenix Cotton Manufacturing Company. The respondent then offered in evidence a new contract made between the complainants and said company, reciting a covenant in the lease for a certain amount of water power, and stipulating for the building of a dam of a certain height and construction, and stating that " it is the understanding between the parties, that if Eli Page has not raised the water in the Nashua River, by his new dam erected in 1852, higher than he formerly had a right to do, then his lease [from the complainants] is null and void." The complainants objected to the introduction of this contract, but the judge permitted it.

The judge, besides other instructions the exceptions to which were not argued, instructed the jury " that the complainants must prove, in order to entitle them to a verdict, and that the burden of proof was on them to do it, that some portion of a parcel of their land, part of which was in the county of Middlesex, was overflowed or in some way injured by the water raised by the respondent's dam; that it was not sufficient to show that the dam had been raised, and that the complainants had land in this county, but the land must be so situated that it or some part of it could be affected by the raising of the dam ; " and " that, it having been admitted that the respondent has a right, by prescription or presumed grant, to keep up a dam to a certain height, the jury, if they find for the complainants, are to find

how high the new dam had been raised more than the respon-
dent had a right before to keep up his dam." The jury found a
general verdict for the respondent, and the complainants alleged
exceptions.

*J. G. Abbott & G. A. Somerby*, for the complainants.

*B. F. Butler*, for the respondent.

This case was decided at October term 1856.

BIGELOW, J. Of the many exceptions taken by the com-
plainants to the rulings of the court, at the trial of this case, a
few only are now insisted upon, which we proceed to consider
and dispose of in their order.

1. The evidence to prove that the master workman, when
erecting the old dam, stated a reason for building it with a
curve in its centre, was rightly excluded. It was the declaration
of a third party, and in its nature mere hearsay evidence. Nor
was it competent as part of the *res gestæ.* The mode in which
the dam was built was a distinct, palpable fact, capable of clear
and absolute proof. No declarations concerning it, or the rea-
sons for constructing it in a particular manner, could prove this
fact more fully or satisfactorily. It was an act which declara-
tions could not illustrate, explain, or in any way characterize.
It is only when the thing done is equivocal, and it is necessary
to render its meaning clear, and expressive of a motive or object,
that it is competent to prove declarations accompanying it, as
falling within the class of *res gestæ.*

2. For the same reason we think the evidence of the direc-
tions given by the respondent as to fixing the height of the old
dam, and erecting the new dam of the same height, were incom-
petent. They did not in any degree tend to make more clear,
or give any peculiar significance to any act or transaction, which
was properly the subject of inquiry before the jury. The facts
to be proved—the height of the old dam, and the erection of the
new one by a mark fixed on a level with the old—could not be
shown or made more clear by declarations or directions of the
respondent. They were capable of direct proof. Besides, the
acts done, and which were the only legitimate subjects of proof,
were wholly disconnected from, and independent of, the direc-

tions of the respondent. They were subsequent in point of time, and not necessarily governed or controlled by them. It did not follow, as a logical or legal conclusion, that the dam was erected according to the order of the respondent, because he gave such orders. The fact was still to be proved by him, and neither his previous directions nor subsequent statements were competent to establish it. *Lund* v. *Tyngsborough*, 9 Cush. 36.

3. It is equally clear, that the evidence of the conversation between Roberts and the respondent, after the former had assisted in placing a mark to designate the height of the old dam, was incompetent. It was a narrative of a past transaction by the witness, and a naked declaration by the respondent; both were inadmissible and irrelevant to the issue.

4. It seems to us, that the contract of lease, executed by the complainants, was admissible. It being conceded that the inquiry concerning the extent of the water power created by the dam across the brook near its source was competent, it follows that the stipulations and agreements concerning it and the quantity of water which the complainants thereby agreed to furnish, were in the nature of declarations by them on that subject, which it was competent for the respondent to prove.

5. The only remaining exception insisted on by the complainants is founded on the instruction given to the jury, that it was necessary, in order to entitle the complainants to a verdict, for them to prove that some portion of a parcel of their land, lying in the county of Middlesex, was overflowed, or in some way injured by the water raised by the respondent's dam. This was clearly erroneous. There was no plea to the jurisdiction of the court, on the ground that the land alleged to be injured was not in the county of Middlesex. Rev. Sts. *c.* 116, § 4. This fact was not in contention between the parties. The only matter in issue was that pleaded in bar of the complaint, namely, a right on the part of the respondent to keep up his dam without payment of damages. Nor would it have been competent for the respondent to plead in bar, or prove at the trial before the court, that the land described in the petition was not injured by the dam. This is expressly prohibited by Rev. Sts. *c.* 116, § 8. The

question whether the land described in the complaint is injured by the dam, amounts to the general issue. It cannot be tried at the bar of the court; but must, from its nature, be determined only by the sheriff's jury, who, by viewing the premises, the situation of the land, the height of the dam the flow of the water, and all the various circumstances bearing on the question, can alone satisfactorily inquire into and settle it. There can be no danger or hardship to the mill-owner in this mode of trying the question. The judgment on matters properly pleaded in bar is only interlocutory. The main question is still to be determined; and if the complainant fails to show any injury to his land, and to obtain damages therefor before the sheriff's jury, then final judgment must be rendered for the respondent. Rev. Sts. *c.* 116, § 17. *Charles* v. *Porter*, 10 Met. 37. The instruction on this point was in direct conflict with the express provision of the statute.

It was further suggested that the instructions of the court were erroneous as to the burden of proof, but, apart from the instruction on that point in connection with the ruling just considered, we do not see that they are open to objection.

*Exceptions sustained.*